**Certiorari Denied, December 30, 2015, No. S-1-SC-35602**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2016-NMCA-015**

**Filing Date: October 20, 2015**

**Docket No. 32,374**

**STATE OF NEW MEXICO,**

      **Plaintiff-Appellee,**

**v.**

**MICHAEL PAUL ASTORGA,**

      **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Stan Whitaker, District Judge**

Hector H. Balderas, Attorney General
Yvonne M. Chicoine, Assistant Attorney General
Santa Fe, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
David Henderson, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**KENNEDY, Judge.**

**{1}**    Michael Astorga (Defendant) stands convicted of the second-degree murder of Candido Martinez. At trial, the deposition of Adeline Martinez, the decedent's sister, was read to the jury. The deposition was taken by counsel for the State and Defense and used at trial without objection. Prior to the beginning of voir dire, Defendant's counsel, along with counsel for the State, met with the district court to discuss jury questionnaires from the first

1

of apparently three jury panels summoned by the court for trial. Some members of the venire panel were excluded as exempt, some for cause, and the remainder appeared for voir dire and jury selection.

**{2}** Defendant argues that the district court erred by failing to inquire as to Defendant's waiver of his right to be present at the deposition of a witness and a portion of the jury selection. The parties are familiar with the facts,[1] and for the sake of brevity in this opinion we present only such facts as are needed for our discussion of the issues.

## I.      DISCUSSION

### A.      We Review for Fundamental Error Only

**{3}** Defendant neither objected to the admissibility of the Martinez deposition testimony at trial, nor raised the issue of his presence when it was taken. He also did not assert any error from him not being present during the conference that preceded jury selection in his case.[2] Defendant thus failed to preserve the issues for appellate review. *See* Rule 12-216 NMRA (stating that in order to preserve a question for review, a party must invoke a ruling or decision by the district court). As such, we review the issues he raises for fundamental error. *State v. Barber*, 2004-NMSC-019, ¶ 8, 135 N.M. 621, 92 P.3d 633.

**{4}** Fundamental error comprises a case-specific calculation. To prevail, Defendant must demonstrate that any error goes to the foundation of the case or takes away a right that was essential to the defense and "which no court could or ought to permit him to waive." *Id.* (quoting *State v. Garcia*, 1942-NMSC-030, ¶ 25, 46 N.M. 302, 128 P.2d 459). Fundamental error is also a doctrine by which courts can "cut through procedure in order to protect the defendant's substantive rights[,]" *Id.* ¶ 15, by focusing "less on guilt and innocence and more on process and the underlying integrity of our judicial system." *Id.* ¶ 16. In respect of judicial integrity, a mistake in the process may make the conviction fundamentally unfair notwithstanding the apparent guilt of the accused, thereby resulting in a miscarriage of justice. *Id.* ¶ 17. Here, we do not consider the situation where fundamental error might apply if Defendant's guilt is less than firmly established. *See, e.g.*, *State v. Swick*, 2012-NMSC-018, ¶ 46, 279 P.3d 747.

**{5}** The burden of demonstrating fundamental error is on the party alleging it, *State v.*

---

[1]We have addressed the facts and other issues raised by Defendant in this appeal in a separate memorandum opinion filed in this case, *State v. Astorga*, No., 32,374, slip op. (N.M. Ct. App. Oct. __, 2015 (non-precedential) concurrently filed on this date. The facts applicable to those issues and our affirming Defendant's convictions on the merits are set forth more completely in that opinion.

[2]Defendant also did not raise these issues in his docketing statement.

2

*Cunningham*, 2000-NMSC-009, ¶ 21, 128 N.M. 711, 998 P.2d 176, and the standard of review for reversal for fundamental error is an "exacting" one. *State v. Samora*, 2013-NMSC-038, ¶ 17, 307 P.3d 328. Defendant must demonstrate prejudice from the errors he alleges; absent a showing of prejudice, Defendant cannot demonstrate error, let alone fundamental error, which we require for unpreserved claims. *See State v. Fernandez*, 1994-NMCA-056, ¶ 16, 117 N.M. 673, 875 P.2d 1104; *see also In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 10, 121 N.M. 562, 915 P.2d 318 ("An assertion of prejudice is not a showing of prejudice."). Here, our decision depends on whether the situations of which Defendant complains rise to the level of calling the process of the trial into question to an extent sufficient to hold that its result cannot be sustained on appeal. For the following reasons, we determine that they do not.

## B.    The Deposition

**{6}**    On December 27, 2011, Ms. Martinez informed the State that owing to an acute medical condition, she would be unable to travel from Albuquerque to testify at Defendant's trial in Las Cruces. Defendant was informed of this situation by the State's motion for deposition. Ms. Martinez' deposition was taken in Albuquerque upon the State's notice on Friday, January 6, 2012. The deposition proceeded without objection by either party, and was taken in her hospital room. Defense counsel was present, and participated by cross-examining the witness. The record is silent as to whether defense counsel ever sought to have Defendant attend the deposition, but Defendant does not allege that he was unaware of it.

**{7}**    The admissibility of the deposition was addressed by counsel and the court prior to trial, in Defendant's presence, and no objection was raised then to its introduction, nor was there any mention that Defendant was not present at the deposition. Defendant objected based on relevance to Ms. Martinez' testimony about bad blood between Defendant and her family because cross-examining the sources of her information was impossible. The objection was overruled. The parties worked out a stipulation for redacted contents of the deposition to be read to the jury, thus eliminating matters conceded by both sides to be prejudicial. Defendant was present and made no further objections as the limited portions of Ms. Martinez' deposition were read into the record at trial.

## 1.    Purpose of the Deposition

**{8}**    Ms. Martinez' deposition was taken by the State for two purposes: her understanding of a long-festering dispute between the families of Defendant and the decedent, and if needed, her recollection that witness Rudy Contreras told her that Defendant had shot the decedent on the same night of the shooting at the hospital where she was attending the decedent. The district court ruled that Contreras' statement would not be admissible at all absent his denying having made it during his testimony. Contreras denied the statement, and the deposition was used to impeach him. During his closing argument, Defendant referenced Ms. Martinez' deposition and used it in an attempt to discredit Contreras's testimony.

3

**{9}** Ms. Martinez' testimony impeaching Contreras' denial of his comment to her at the hospital is not substantive evidence, and does not implicate the Confrontation Clause.[3] *See State v. Granillo-Macias*, 2008-NMCA-021, ¶ 23, 143 N.M. 455, 176 P.3d 1187 (acknowledging that the Confrontation Clause extends only to persons offering substantive evidence against a defendant at trial). Her deposition testimony was not offered for its substantive truth or falsity, but under Rule 11-801(D)(1)(a) NMRA governing prior inconsistent statements. *State v. Astorga*, 2015-NMSC-007, ¶ 31, 343 P.3d 1245 (stating that "prior inconsistent statements are inherently relevant for a 'non-hearsay' purpose [of] impeaching a witness's credibility").

**{10}** Ms. Martinez' substantive testimony presented her knowledge of family history as to bad blood between her brother and Defendant. The jury heard from Maez, Prieto, and Contreras that the '59 El Camino was a source of enmity between Defendant and decedent. Use of the deposition in this regard was cumulative, and of little weight for calculating fundamental error. *State v. Crain*, 1997-NMCA-101, ¶ 29, 124 N.M. 84, 946 P.2d 1095 (admission of objectionable testimony may be harmless when it is cumulative of other evidence); *see State v. Lopez*, 2000-NMSC-003, ¶ 21, 128 N.M. 410, 993 P.2d 727 (holding that where improper testimony was cumulative of testimony of three other witnesses, was harmless beyond a reasonable doubt).

**{11}** The two purposes for which the deposition was used do not indicate to us a defect in the proceedings that results from Defendant's absence that is so substantial as to call the integrity of the trial into question. Defendant's argument is that the district court erred "when it failed to make any inquiry whether [Defendant] waived his right to be present" during the deposition and a portion of jury selection. Defendant gives us no New Mexico authority holding that a pretrial deposition is a critical stage of the proceedings requiring his presence. Rule 5-503(F) NMRA generally governing depositions in criminal cases not only does not require a defendant's presence, but allows a party in a criminal case to submit written questions to a deponent "[i]n lieu of participating in the oral examination." In *State v. Herrera*, 2004-NMCA-015, ¶ 9, 135 N.M. 79, 84 P.3d 696, the defendant did not respond to the State's motion for the deposition, did not object at the time of the deposition, or the time the deposition was used at trial, and used the deposition at trial in closing arguments. We held that he implicitly waived his right to face-to-face confrontation with the witness. *Id.* We acknowledge that in *Herrera*, the defendant took part in the deposition from another room and was able to communicate with counsel, *id.* ¶ 11, but we held the waiver resulted from giving no indication of concern with the admission of the deposition. *Id.* ¶ 14.

**{12}** In this case, necessity dictated the deposition be taken; the parties had a month's

---

[3]We acknowledge Defendant's point in his reply brief that the State misguidedly attempted in its answer brief to use Martinez' impeaching statement as part of the substantive and substantial evidence showing Defendant's guilt at trial. However, its use at trial was properly stated as impeachment of Contreras.

4

notice from the witness that she would be unavailable for trial due to a medical condition that required her deposition be taken in hospital. The use of Ms. Martinez' testimony was cumulative as to the history of Defendant's grudge against the decedent, and was cross-examined based on family hearsay. The use of Contreras' prior inconsistent statement cannot form the basis for a confrontation violation, nor is it hearsay. Defendant asserts no prejudice from the use of the deposition. In the presence of the Defendant, defense counsel made a tactical decision, by which Defendant is bound, to use the deposition at trial, and to argue its weight and implications to the jury in closing argument. At no point did Defendant object or indicate in any way that he disagreed with defense counsel's decisions. We regard those tactical decisions as negating the existence of fundamental error with regard to Defendant's presence at the deposition. *See State v. Reim*, 2014 MT 108, ¶ 41, 374 Mont. 487, 323 P.3d 880 (finding no fundamental error when the defendant's counsel attended deposition, fully cross-examined the witness, and the deposition was admitted at trial without objection).

{13}     Because Defendant had notice of Ms. Martinez' deposition, was fully represented at the deposition, did not object to its use at trial, and in fact used it in his defense, we hold that the district court did not err, when it did not inquire whether Defendant had waived his right to be present at Ms. Martinez' deposition, although this case presents a cautionary example for both courts and defendants. Defendant has not carried his burden to establish the existence of fundamental error on this issue. We next address whether the district court erred in failing to inquire as to whether Defendant waived his right to be present during a preliminary stage of jury selection.

C.     **"Culling"**

{14}     Defendant next argues that the district court also erred in failing to inquire whether he had waived his right to be present at a conference between the district court and counsel that occurred in Albuquerque on Friday, January 6, 2012,[4] preceding the commencement on the following Monday of jury selection for trial. As with the deposition question, Defendant does not directly allege that his rights to be present were violated, or that he was prejudiced. There is no indication in the record, for instance, that he was not informed by counsel of the proceedings, wished to be present, or otherwise suffered any prejudice from the lack of his presence. He does not seek to demonstrate any greater prejudice to his case than a simple alleged violation of his right to be present at a "critical stage" of the proceedings. When jurors appeared on Monday for voir dire examination and jury selection, Defendant was present. He simply states that it was error not to be asked by the trial court whether his presence at a conference to discuss juror qualification based on their questionnaires was something voluntarily waived. Again, since no error was preserved below, we review for fundamental error.

{15}     We recognize that there are some rights that are so personal to the defendant that

---

[4]The jury culling preceded the deposition of Ms. Martinez by minutes.

inquiry into a defendant's decision to waive them is necessary, such as the right to counsel, the right to go to trial, and the right to plead guilty. *State v. Singleton*, 2001-NMCA-054, ¶ 12, 130 N.M. 583, 28 P.3d 1124. Presence at the critical stage of "jury selection" is generally such a right. *State v. Padilla*, 2002-NMSC-016, ¶ 11, 132 N.M. 247, 46 P.3d 1247. However, it is not such an essential right that absence from voir dire requires automatic reversal. *Id.* ¶ 17. *Padilla* also recognized that a defendant's presence at that stage may be voluntarily waived, *id.* ¶ 14, even by implication, *id.* ¶ 12. *Padilla* addressed absence at voir dire, not a preliminary assessment of jurors' qualifications based on juror questionnaires. *Id.*

**{16}** The State relies on *State v. Huff*, 1998-NMCA-075, 125 N.M. 254, 960 P.2d 342, and *State v. Sanders*, 2000-NMSC-032, 129 N.M. 728, 13 P.3d 460, to the effect that the proceeding at which Defendant was not present was not voir dire, and not one in which he had an enforceable right to participate. The State asserts that the conference involved "the jury culling process" and therefore, the district court was not obligated to inquire after Defendant's waiver of presence. We first evaluate whether what occurred qualifies as jury "culling" under *Huff* and *Sander*s, and then address whether Defendant had a right to be present during the district court's conference with counsel.

## 1.    The Conference

**{17}** From our review of the transcript, it appears that the district court, the State, and defense counsel engaged in an on-record conference in chambers regarding the disqualification of a number of potential jurors from the first of three pools. The court and the parties had previously determined that voir dire would be conducted in groups of thirty prospective jurors in Las Cruces beginning the Monday following the conference. The purpose of the conference was to go through the juror questionnaires that had been received to determine, as a preliminary matter, which jurors on the panel were likely subject to challenge and excusal, and could be excused for cause and notified so they did not have to travel to Las Cruces. No jurors were present or questioned during this conference. Counsel were present, Defendant was not.

**{18}** During the conference, the district court went through a list it had prepared of "good strong challenges" for cause with the parties, and struck for cause fifteen panel members who, because of their questionnaire responses, generally fit into one—or more—of the following categories: those who had previously researched Defendant, the case, his previous convictions, and also had negative opinions of Defendant personally from this information; those who claimed religious proscriptions against service; one juror who had family members who had been murdered, and one who made statements of serious prejudice toward illegal immigrants. One other juror was excluded at the State's suggestion for demonstrating prejudice, and another was struck for indicating an inability to deliberate. No juror was excused for cause absent concurrence by both the State and defense. One juror with an equivocal demonstration of prejudice was explicitly left on the panel for later voir dire in open court, and some jurors with questions concerning United States citizenship were left

for voir dire as well.[5] Defendant makes no assertion that he did not receive a fair and impartial jury.

## 2. Culling is Not Voir Dire

**{19}** Defendant is correct that a criminal defendant has a constitutional right to be present at all critical stages of trial, *see* Rule 5-612(A) NMRA, and that jury selection is considered a critical stage. *Padilla*, 2002-NMSC-016, ¶ 11. On the other hand, despite Defendant's reliance on *Padilla*, *id.*, which is silent on the matter, the State correctly points out that our Supreme Court has held that a defendant has no statutory authority to participate in the jury "culling" process, where the judge disqualifies or exempts prospective jurors pursuant to the statutory exemptions contained in NMSA 1978, §§ 38-5-1 (2006) and 38-5-11(B) (2005); *Sanders*, 2000-NMSC-032, ¶ 24 (holding that the district court properly denied the defendant's motion to monitor culling of jurors who are "disqualified or excused on statutory grounds" (internal quotation marks and citation omitted)). The exemptions in the former statute are limited to "physical or mental illness or infirmity" and "undue or extreme physical or financial hardship." Section 38-5-1(A). The latter statute permits jury questionnaires to be administered for the purpose of obtaining information to aid the court in ruling on requests for a number of purposes. It provides:

> B. The judge or the judge's designee shall submit questionnaires to prospective jurors to:
>
> (1) obtain any information that will aid the court in ruling on requests for exemption or excuse from service or postponement of service;
>
> (2) aid the court and the parties in voir dire examination of jurors or in determining a juror's qualifications to serve on a particular petit jury panel, trial jury or grand jury; or
>
> (3) aid in the determination of challenges for cause and peremptory challenges.

Section 38-5-11(B). In *Sanders*, 2000-NMSC-032, ¶ 24, our Supreme Court held that the culling process involves both statutes. We read *Sanders* to expand *Huff*'s statutory application to permit the culling process to go beyond determining exemptions from service under Section 38-5-1 to address the qualification of jurors to serve, and determine challenges for cause under Section 38-5-11(B). In *Huff*, the defendant argued that he should have been present when the clerk of the court culled disqualified or exempted members from the jury

---

[5] This process seems to parallel the ones mentioned in *State v. Vasquez*, 2010-NMCA-041, ¶ 34, 148 N.M. 202, 232 P.3d 438, and *State v. Mantelli*, 2002-NMCA-033, ¶ 52, 131 N.M. 692, 42 P.3d 272.

pool prior to voir dire examination. We found that the defendant's presence would not have any effect on that process. We further noted that he would not be able to provide any special insight into the process of removing jurors from the jury pool who were disqualified or excused on statutory grounds. *See* Section 38-5-1. In *Sanders*, the defendant filed a motion to monitor the jury culling process, which was denied. The *Sanders* court referred to our recent decision on this very issue in *Huff* and noted that the *Huff* reasoning was particularly convincing when viewed in light of Section 38-5-11(C), which provides for inspection and copying of qualified jury panel members' questionnaires. We conclude that juror questionnaires have a place in culling prospective jurors when they demonstrate an adequate degree of potential impairment of the performance of their duties under their oath, and further, that *Sanders* contemplated the culling process, and the exercise of judicial discretion in allowing challenges for cause based on questionnaires.

**{20}** Defendant has registered no complaint about any of the jurors who were excluded, and was present for voir dire and selection of the trial jury. The process of voir dire where a defendant and his counsel are "face-to-face with the jurors," attempting to read the reaction of jurors to the lawyer and client is the critical stage for which our Supreme Court recognized a right to the defendant's presence in *State v. Garcia*, 1980-NMSC-132, ¶ 15, 95 N.M. 246, 620 P.2d 1271. The weight of authority requiring a defendant's presence during jury selection is limited to the actual voir dire questioning of jurors where the value of a Defendant's presence "depend[s] upon the aid which, by his personal presence, he may give to counsel and to the court and triers in the selection of jurors." *Lewis v. United States*, 146 U.S. 370, 373 (1892). In *Lewis*, the right of the defendant to be present recognized the value associated with face-to-face contact to facilitate the process of peremptory challenges, when challenges for cause had proven "insufficient to set aside the juror[.]" *Id.* at 376-77. Voir dire includes not only the introduction of the jurors to facts in the case, but subjects them to scrutiny by the court and parties of "not only spoken words but also gestures and attitudes of all participants to ensure the jury's impartiality." *Gomez v. United States*, 490 U.S. 858, 874-75 (1989).

**{21}** Culling actually complements the voir dire process by narrowing the jury pool to more qualified candidates. The U.S. Supreme Court has recognized the value of juror questionnaires in performing initial screening of jurors in cases, such as this, where a large jury pool is involved. *Skilling v. United States*, 561 U.S. 358 (2010). In *Skilling*, the "[d]istrict [c]ourt initially screened venire members by eliciting their responses to a comprehensive questionnaire." *Id.* at 388. The questionnaire "helped to identify prospective jurors excusable for cause and served as a springboard for further questions put to remaining members of the array." *Id.* The Supreme Court concluded that combining the initial culling process with a subsequent "face-to-face opportunity to gauge demeanor and credibility, coupled with information from the questionnaires regarding jurors' backgrounds, opinions, and sources of news, gave the court a sturdy foundation to assess fitness for jury service." *Id.* at 395. The California Supreme Court, when reviewing this same process, held that "the procedure benefited all parties by substantially expediting the jury selection process and "culling out" prospective jurors who probably would have been unable to serve." *People v.*

*Ervin*, 22 Cal. 4th 48, 78, 990 P.2d 506, 521 (Cal. 2000). Its ruling was based on an assessment that the "[d]efendant's presence at the jury screening discussions would have served little tactical purpose." *Id. Gomez*, distinguished between the face-to-face examination of jurors' qualifications where scrutiny of "spoken words but also gestures and attitudes of all participants to ensure the jury's impartiality" from an "administrative empanelment process." 490 U.S. at 874-75. Accordingly, as described in *Sanders*, the "culling" process "is the stage in which the judge or designee disqualifies or exempts prospective jurors pursuant to the statutory exemptions contained in [Section] 38-5-1 and [Section] 38-5-11(B)." *Sanders*, 2000-NMSC-032, ¶ 24.

**{22}**    We conclude that the process employed by the district court in this case was proper culling, at which Defendant had no fundamental right to be present, since culling is a basically administrative process occurring outside the presence of the jurors. Facially qualified jurors who remained were then available for full questioning by the court and parties in voir dire with Defendant present. Such a process is more efficient for a lack of obviously disqualified jurors, and permits Defendant the full exercise of his rights to the face-to-face process of evaluating trial jurors. This view squares with *Sanders* that a defendant had no right to be present during culling because, "unlike the process of challenging potential jurors where [the d]efendant may be able to discern some bias or prejudice, [the d]efendant can provide no special insight into the removal of jurors from the pool who are disqualified or excused on statutory grounds." *Id.* (quoting *Huff*, 1998-NMCA-075, ¶ 31).

**{23}**    Therefore, following *Sanders*, since questionnaires from the jurors can aid in preparing for either voir dire, *or* determining juror qualification to serve while also aiding "in the determination of challenges for cause," Section 38-5-11(B)(2), (3), we hold that using them to thin the ranks of prospective jurors who are clearly disqualified for statutory exemptions or other good cause constitutes permissible "culling" for which the Defendant need not be present. Defendant and his attorney were present for all subsequent stages of jury selection, including questioning and exercising any other resulting challenges.

**{24}**    We conclude that Defendant has failed to demonstrate any fundamental error, because a "fundamental error occurs where there has been a miscarriage of justice, the conviction shocks the conscience, or substantial justice has been denied." *State v. Cabezuela*, 2011-NMSC-041 ¶ 49, 150 N.M. 654, 265 P.3d 705 (internal quotation marks and citation omitted). Defendant has alleged no consequence from any error in not inquiring as to whether he waived his presence for the jury culling, and we have determined that under *Sanders*, he had no such right. Since Defendant fails to point us to any reason that the conference, and the exclusion of jurors that resulted from it, somehow contributed to his conviction or resulted in an unsound process that prejudiced his rights, we will not search for facts to support any such conclusion. *See State v. Soutar*, 2012-NMCA-024, ¶ 39, 272 P.3d 154. Indeed, the parties and the court removed only jurors whose bias against Defendant was readily apparent; jurors whose prejudice or bias was deemed equivocal were left for full questioning during voir dire.

9

**This Appeal Is Not a Proxy for an Ineffective Assistance Claim**

**{25}** To the extent that Defendant implicitly asserts that failure to object to use of the deposition testimony, or not insisting on his presence at the discussion preceding jury selection reflects some defect in performance on the part of his trial counsel, a claim of ineffective assistance of counsel is best addressed in a habeas corpus proceeding. *Samora*, 2013-NMSC-038, ¶ 23

## II.    CONCLUSION

**{26}** To the extent that Defendant was not present for Ms. Martinez' deposition or the meeting between the trial court and counsel prior to jury selection, we observe no procedural or substantive defects in the process that rise to a level that would deprive Defendant of the fundamental fairness of the proceedings. As such, we find no fundamental error, and, together with the reasons given in the memorandum opinion filed herewith, affirm Defendant's convictions in the district court.

**{27}    IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**M. MONICA ZAMORA, Judge**