This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-34542**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**LONNIE LEE LODDY,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF VALENCIA COUNTY**
**James L. Sanchez, District Judge**

Hector H. Balderas, Attorney General
Maha Khoury, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**B. ZAMORA, Judge.**

**{1}** Defendant Lonnie Lee Loddy was convicted of possession of a controlled substance, contrary to NMSA 1978, Section 30-31-23(E) (2011, amended 2019), and possession of drug paraphernalia, contrary to NMSA 1978, Section 30-31-25.1(A) (2001, amended 2019). Defendant argues that (1) the district court violated his constitutional right to be present at all critical stages of his criminal proceeding by reading the verdict in his absence; (2) the district court erroneously denied his motion to

suppress; (3) his constitutional right to effective assistance of counsel was violated; and (4) the State failed to present sufficient evidence to support his convictions. We affirm.

**BACKGROUND**

**{2}**     In July 2012, the police were dispatched to Mount Laurel Street in Los Lunas in reference to "a fight in progress . . . with numerous subjects fighting in the middle of the street." The dispatcher identified two vehicles involved in the fight: "a silver van and a black truck with flames painted on it." Upon arrival, Officer Michael Romero and Officer Buster Whitley saw "a silver van and a black truck with flames painted on the side" driving towards them, and pulled in front of the vehicles in their patrol car with their lights and sirens on. Officer Romero testified that he and Officer Whitley "held everybody in the vehicles at gunpoint until other officers arrived on scene." Officer Whitley observed Defendant driving the black truck. While waiting for other officers to arrive, Officer Romero ordered the people inside Defendant's truck to keep their hands visible outside of the window, but Defendant "kept putting his hands inside the vehicle."

**{3}**     The officers called for backup, and after additional officers arrived, Defendant was ordered out of his vehicle so that officers could conduct a safety pat-down of the vehicle's occupants. Defendant did so and left the driver's side door open. When Officer Romero asked Defendant for identification, he "said it was on the passenger seat of his vehicle." While retrieving Defendant's identification, Officer Romero observed a "marijuana pipe" in the center console. Defendant admitted to Officer Romero that the pipe was his. Officer Romero testified that he was informed by "a deputy" that "a little plastic baggie containing a white crystal-like substance" was in plain view on the floorboard of the driver's side of the truck. Defendant was arrested immediately after a "field test" confirmed the substance to be "crystal meth."

**{4}**     Two issues arose during the trial that are relevant on appeal. First, Defendant raised a motion to suppress the evidence found by law enforcement mid-trial, arguing the stop was "illegal" and everything seized "after the illegal stop would be fruit of the poisonous tree," but the district court found that the stop was "valid" and denied Defendant's motion. Second, while the jury was deliberating, Defendant left the courthouse and never returned. Once the jury had reached a verdict, the district court waited approximately twenty-five minutes, and eventually read the verdict without Defendant present. Defendant was found guilty of possession of a controlled substance and possession of drug paraphernalia. This appeal followed.

**DISCUSSION**

**I.     Absence During Reading of Verdict**

**{5}**     Defendant challenges the district court's decision to read the verdict in his absence because the "record does not substantiate that [Defendant] was voluntarily absent or that he otherwise waived his presence at the rendition of the verdict of his

case." The State argues that Defendant's voluntary absence should be equated to an implied waiver by Defendant. For the reasons stated below, we agree with the State.

**{6}** We review de novo whether Defendant's voluntary absence during the reading of the verdict was an implicit waiver of his constitutional right to be present at all critical stages of his criminal proceeding. *See State v. Padilla*, 2002-NMSC-016, ¶ 18, 132 N.M. 247, 46 P.3d 1247. Because defense counsel did not object to the reading of the verdict in Defendant's absence, we review for fundamental error. *See State v. Sosa*, 2009-NMSC-056, ¶ 26, 147 N.M. 351, 223 P.3d 348 ("Where counsel fails to object, the appellate court is limited to a fundamental error review."). Fundamental error "applies only if there has been a miscarriage of justice, if the question of guilt is so doubtful that it would shock the conscience to permit the conviction to stand, or if substantial justice has not been done." *State v. Sutphin*, 2007-NMSC-045, ¶ 16, 142 N.M. 191, 164 P.3d 72 (internal quotation marks and citation omitted). The burden is on the party "alleging fundamental error" to "demonstrate the existence of circumstances that shock the conscience or implicate a fundamental unfairness within the system that would undermine judicial integrity if left unchecked." *State v. Cunningham*, 2000-NMSC-009, ¶ 21, 128 N.M. 711, 998 P.2d 176 (internal quotation marks and citation omitted).

**{7}** A defendant has the constitutional right to be present at all critical stages of a criminal case. *State v. Astorga*, 2016-NMCA-015, ¶ 19, 365 P.3d 53; *see State v. Clements*, 1988-NMCA-094, ¶ 12, 108 N.M. 13, 765 P.2d 1195 (stating that a defendant's right to be present "has its genesis in the sixth amendment's confrontation clause and the fourteenth amendment's due process clause"). Rule 5-612 NMRA protects a defendant's "constitutional right to be present . . . at all critical stages of trial[.]" *Padilla*, 2002-NMSC-016, ¶ 11. However, this right is not absolute. Rule 5-612(B), (C)(1) states that a "defendant may waive the right to be personally present," and "[t]he further progress of the trial, including the return of the verdict . . . shall not be prevented . . . *whenever a defendant who was initially present . . . is voluntarily absent after the trial has commenced (whether or not he has been informed by the court of his obligation to remain during the trial)*[.]" (Emphasis added.)

**{8}** Defendant contends that his waiver was required to be on the record. We disagree. Our Supreme Court has held that a defendant's conduct alone can impliedly waive his right to be present at trial. *See Padilla*, 2002-NMSC-016, ¶ 8 (noting that departure from trial before it has concluded is considered "a knowing and voluntary waiver of the right to be present" (internal quotation marks and citation omitted)); *see also id.* ¶ 12 (stating that "an accused may either expressly or by implication waive his right to be present by being voluntarily absent" (internal quotation marks and citation omitted)); *Hovey v. State*, 1986-NMSC-069, ¶ 17, 104 N.M. 667, 726 P.2d 344 (holding that a "defendant need not be present in court in order to waive his right to be present"). Therefore, an express, on-the-record waiver was not required; Defendant can waive his right to be present for the reading of the verdict by virtue of his voluntary absence from the courtroom.

**{9}** Based on our review of the record, Defendant's absence was voluntary. The district court waited an additional twenty to twenty-five minutes for Defendant after the jury had reached a verdict before it proceeded. Before reading the verdict, the district court pointedly asked defense counsel, "Why did you *allow* him to leave?" Defense counsel responded, "[I]n retrospect, I should have kept him here[,]" that he thought defendant was only going to the parking lot, and that he had "made sure [Defendant] gave [him] a number when [Defendant] left so [defense counsel] could call him." The reading of the verdict then proceeded without objection from defense counsel. After the reading of the verdict, the State clarified that Defendant "left by himself" and never came back. Defendant never returned to the courtroom after the verdict was read, and defense counsel did not object to the State's recitation of what had transpired. We have previously held that when a defendant leaves mid-trial and the district court resumes trial without objection, a district court is not required to "conduct an inquiry into the reason" for the defendant's absence because "a defendant shall be considered to have waived his right to be present at [the] trial if he voluntarily absents himself after the trial has commenced." *State v. Burrell*, 1976-NMCA-025, ¶¶ 11-13, 89 N.M. 64, 547 P.2d 69. Like the defendant in *Burrell,* Defendant left voluntarily after the trial began, and defense counsel did not object to proceeding with the trial in Defendant's absence. Defendant has not demonstrated circumstances that "shock the conscience" of the Court and accordingly, there was no fundamental error. *See Cunningham*, 2000-NMSC-009, ¶ 21.

## II.    Motion to Suppress

**{10}** Defendant argues that the traffic stop violated Defendant's right to be free from unreasonable searches and seizures, and as a result, that the district court erred by admitting evidence flowing from the stop. Defendant contends that the stop was neither justified at its inception, nor reasonable in its scope.[1]

**{11}** The Fourth Amendment of the United States Constitution and Article II, Section 10 of the New Mexico Constitution establish an individual's right to be free from "unreasonable searches and seizures." U.S. Const. amend. IV; N.M. Const. art. II, § 10. A traffic stop and the attendant detention of a vehicle's occupants is a "seizure" within the meaning of Article II Section 10 and the Fourth Amendment. *See State v. Duran*, 2005-NMSC-034, ¶ 22, 138 N.M. 414, 120 P.3d 836, *overruled on other grounds by State v. Leyva*, 2011-NMSC-009, ¶ 17, 149 N.M. 435, 250 P.3d 861.[2] While law

---

1We note that Defendant raised his motion to suppress orally during trial, rather than filing a motion to suppress at least sixty days prior to trial as required by Rule 5-212(C) NMRA. *See generally City of Santa Fe v. Marquez*, 2012-NMSC-031, ¶¶ 24-25, 285 P.3d 637. However, because neither party made any arguments regarding Rule 5-212(C) either below or on appeal, we decline to address its application and effect. *See State v. Gonzales*, 2011-NMCA-007, ¶ 19, 149 N.M. 226, 247 P.3d 1111 (noting that "this Court has no duty to review an argument that is not adequately developed").

2Defendant contends the State violated both his federal and state constitutional rights. However, Defendant fails to direct this Court to any case law that would require a different *Terry* analysis under the New Mexico Constitution. *See Leyva*, 2011-NMSC-009, ¶ 49 (holding that if a state constitutional provision has not been interpreted as offering greater protections to the defendant than its federal counterpart, the defendant must develop an argument to justify the court conducting an interstitial analysis). Accordingly, we decline to further address Defendant's state constitutional claim.

enforcement officers are generally required to articulate probable cause for conducting a search or seizure, investigatory stops including traffic stops are the type of brief detentions properly analyzed under the framework articulated by the United States Supreme Court in *Terry v. Ohio*, 392 U.S. 1 (1968**)**. *See State v. Leyva*, 2011-NMSC-009, ¶ 10, 149 N.M. 435, 250 P.3d 861 (citing *Duran*, 2005-NMSC-034, ¶ 23, for the proposition that New Mexico courts apply the *Terry* analysis to traffic stops). Pursuant to *Terry*, "police may make an investigatory stop in circumstances that do not rise to probable cause for an arrest if they have a reasonable suspicion that the law has been or is being violated." *State v. Flores*, 1996-NMCA-059, ¶ 7, 122 N.M. 84, 920 P.2d 1038 (citing *Terry*, 392 U.S. at 21-22). "The two-part *Terry* analysis looks at [1] whether the officer's action was justified at its inception, and [2] whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Leyva*, 2011-NMSC-009, ¶ 10 (alterations in original) (internal quotation marks and citation omitted).

**{12}** Because an analysis of "whether police conduct was objectively reasonable extends beyond fact-finding[,]" we apply a de novo standard of review with respect to the reasonable suspicion inquiry, examining the totality of the circumstances. *State v. Alderete*, 2011-NMCA-055, ¶ 14, 149 N.M. 799, 255 P.3d 377 (internal quotation marks and citation omitted). "First, we look for substantial evidence to support the trial court's factual finding, with deference to the district court's review of the testimony and other evidence presented." *State v. Yazzie*, 2016-NMSC-026, ¶ 15, 376 P.3d 858 (internal quotation marks and citation omitted). "We then review the application of the law to those facts, making a de novo determination of the constitutional reasonableness of the search or seizure." *Id.* (internal quotation marks and citation omitted).

## A. The Stop Was Reasonable at Its Inception

**{13}** Defendant argues that the law enforcement officers' stop of his vehicle constituted an illegal search and seizure because it was "not supported by reasonable suspicion." Defendant notes that the sole justification for the stop was that the vehicle "matched the description of a car occupied by individuals who were alleged to have been involved in a fight."

**{14}** In order to validly stop an automobile, law enforcement officers must possess, at a minimum, reasonable suspicion that a law has been violated, based on "specific articulable facts . . . that, when judged objectively, would lead a reasonable person to believe criminal activity occurred or was occurring." *State v. Vandenberg*, 2003-NMSC-030, ¶ 21, 134 N.M. 566, 81 P.3d 19 (omission in original) (internal quotation marks and citation omitted). Where "ambiguous circumstances could reasonably be construed as involving lawful or unlawful activity[,]" an "investigatory intrusion" is allowed in the form of a traffic stop. *Yazzie*, 2016-NMSC-026, ¶ 22.

**{15}** In this case, Officers Romero and Whitley were advised by dispatch that there was "fighting in the . . . street" and that the conflict involved "numerous subjects," including a shirtless individual. Acting on the information provided by dispatch, Officers

Romero and Whitley initiated a traffic stop of Defendant, who was found shirtless and driving a vehicle that matched the specific color, paint job, and type described by dispatch: a black truck with flames painted on it. This is the type of information that we have previously held sufficient to establish probable cause to initiate an investigatory stop. *See State v. Tidey*, 2018-NMCA-014, ¶¶ 22-23, 409 P.3d 1019 (concluding that there was probable cause following a report to dispatch correctly identifying a vehicle's color and location, and a potentially unlawful activity: dangerous driving); *State v. Contreras*, 2003-NMCA-129, ¶ 5, 134 N.M. 503, 79 P.3d 1111 (same); *Flores*, 1996-NMCA-059, ¶¶ 8-9 (holding that a tip that informed police of the number of vehicles, "as well as a description of the vehicles, the time of departure, the direction of travel, and the destination" provided sufficient justification to conduct an investigative stop).

**{16}** Defendant contends that the situation the officers encountered when they arrived on scene presented neither danger nor evidence of a crime because the "officers did not have information that the fighting was physical or that there were any weapons involved" and "did not observe any fighting." We agree that whether a crime is ongoing and the level of potential danger to the public are factors to be considered in assessing the reasonableness of an investigative stop. *See Tidey*, 2018-NMCA-014, ¶ 23 (balancing the public interest against an individual's right to be free from intrusion by law enforcement). However, the fact that the officers did not observe fighting and could not confirm the presence of weapons or physical violence when they arrived on scene is not dispositive. *See id.* (holding that probable cause existed to stop a reportedly drunk driver even though the officer did not personally witness any erratic driving because "the possible danger to the public of a drunk driver presents an exigent circumstance that can tip the balance in favor of a stop"). In this case, officer testimony supports that the reported fight presented a danger to the public justifying the stop. As Officer Romero testified, "we immediately [employed] lights and sirens because life could be in danger when there's a fight in progress." Moreover, the absence of ongoing fighting at the scene must be weighed against the other facts confirmed by the officers when considering whether the officers' actions were justified. *See Contreras*, 2003-NMCA-129, ¶ 5 ("[A] deficiency in one consideration can be compensated for by the strength in another consideration."). In this case, it is enough that the information provided by dispatch "contained sufficient information and was sufficiently reliable to provide the [officers] with reasonable suspicion that a crime was being or was about to be committed" and that "the possible danger to public safety was sufficient for the [officers] to conduct the . . . stop." *Id.* ¶ 7. Defendant was not stopped for "vague allegations of past misconduct," as he suggests, but was instead stopped because of "facts and . . . rational inferences" known to Officers Romero and Whitley that criminal activity was possibly afoot. *See Flores*, 1996-NMCA-059, ¶ 7. Accordingly, we hold that the first prong of the *Terry* test has been met. The officers' actions were justified at their inception.

## B.    The Stop Was Reasonable in Scope

**{17}** Turning to the second prong of the *Terry* test, Defendant contends that even if the stop was valid, "the manner and scope of the detention here went far beyond what

was reasonably necessary to investigate the purported reason for the stop." Defendant argues that police were without "sufficient justification" to expand the scope of the investigation because "before any inquiry into the fight was made and with no evidence a fight had occurred and no aggressive conduct directed at the officers, the occupants of the car were individually removed from the car, patted down, cuffed, and placed in the back of police cars."

**{18}**  "During an investigatory stop, when an officer reasonably believes the individual may be armed and dangerous, he or she may check for weapons to ensure personal safety." *Flores*, 1996-NMCA-059, ¶ 17. An officer's "generalized concern" when performing a traffic stop is insufficient to override "privacy considerations" and perform a search for weapons. *State v. Affsprung*, 2004-NMCA-038, ¶ 20, 135 N.M. 306, 87 P.3d 1088. However, an officer's pat-down of a defendant for weapons may be justified by the "nature of the crime being investigated." *Flores*, 1996-NMCA-059, ¶ 17; *see also Vandenberg*, 2003-NMSC-030, ¶ 22 (noting that "[w]e have previously made clear that when an officer is investigating inherently dangerous crimes, such as burglary or robbery, or a drive-by shooting, the nature of the crimes may be a sufficient predicate, depending on the totality of the circumstances, to consider a suspect armed and dangerous subject to a protective frisk for weapons" (citations omitted)); *State v. Lovato*, 1991-NMCA-083, ¶ 26, 112 N.M. 517, 817 P.2d 251 (recognizing that when police are approaching a vehicle with multiple people seated within, "requiring the persons to get out of the car and be subject to a protective frisk" can be a justifiable "precautionary measure[] addressed to reasonable fears").

**{19}**  Of critical import to our analysis of the second *Terry* prong are the additional facts leading to the removal and pat-down of the vehicle's occupants after the initial stop. Defendant's vehicle held multiple passengers, a potentially dangerous situation for the two officers. For "safety reasons just in case somebody [was] reaching for a gun or something under the seats" the officers told "the subjects to keep their hands where [they could] see them . . . and [Defendant] kept putting his hands inside the vehicle[.]" In the circumstances of this case, Defendant's refusal to show the officers his hands justified removing the occupants from the vehicle and conducting a pat-down for weapons. *See State v. Talley*, 2008-NMCA-148, ¶ 24, 145 N.M. 127, 194 P.3d 742 (holding that a defendant ignoring officer's requests to remove his hands from his pockets was a significant factor in justifying the officer's frisk for weapons); *see also United States v. Johnson*, 238 F. Supp. 2d 663, 667-70 (D. Del. 2002) (concluding that a parked-car occupant's action of placing his hands where approaching police officers could not see them in disregard of officers' order to show hands was grounds to conduct a weapons frisk, even in the absence of any other evidence of unlawful activity). Defendant cites *Affsprung*, 2004-NMCA-038, ¶ 20, for the proposition that a "generalized safety concern flowing from a traffic stop" is "insufficient to override the Fourth Amendment." However, the circumstances that the officers encountered in this case are different than those at issue in *Affsprung*. The defendant in *Affsprung* was merely a passenger in a vehicle pulled over for a faulty license plate light. *Id.* Here, Defendant was stopped and frisked during an investigation of a fight, was one of three rather than two people in a vehicle, and was only pulled out of the vehicle and searched

after he failed to keep his hands where the officers could see them. The officers had "specific and articulable facts" supporting their "assessment of danger." *State v. Sanchez*, 2005-NMCA-081, ¶ 12, 137 N.M. 759, 114 P.3d 1075 (internal quotation marks and citation omitted). The officers were not required to wait until weapons were brandished or someone was injured before initiating a safety pat-down. *See id.* ¶ 14 (noting that "[a]n officer does not need to wait until he sees the glint of steel before he can act to protect his safety" (internal quotation marks and citation omitted)); *accord Michigan v. Long*, 463 U.S. 1032, 1050 (1983) ("The issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." (alteration, internal quotation marks, and citation omitted)). Under a totality of the circumstances approach, we hold that the officers' safety concerns were objectively reasonable, and thus the protective pat-down of the vehicle's occupants and their detention for that purpose was justified.

**{20}**   Defendant correctly notes that under the second *Terry* prong, an investigatory "detention must . . . be reasonably related to the circumstances that initially justified the stop, and the scope of the investigation may expand only when the officer has reasonable and articulable suspicion of other criminal activity." *State v. Patterson*, 2006-NMCA-037, ¶ 16, 139 N.M. 322, 131 P.3d 1286 (internal quotation marks and citation omitted). Pursuant to this case law, Defendant contends that the officers did not need to delay their investigation into the fight—the alleged reason for the stop—until after all of the individuals in the car had been investigated for weapons and were individually secured in police cars. Defendant argues that under the Fourth Amendment, an " 'officer's subsequent actions are not reasonably related in scope to the circumstances that caused him to stop the vehicle if he detains its occupants beyond the time needed to investigate the circumstances that caused the stop' . . . Thus, '[w]hether an officer's questioning measurably extends the length of the traffic stop remains the proper analysis.' " *State v. Portillo*, 2011-NMCA-079, ¶ 19, 150 N.M. 187, 258 P.3d 466 (quoting *Leyva*, 2011-NMSC-009, ¶ 21).

**{21}**   While Defendant cites to correct law, Defendant's application of that law to the facts is misguided. It is important to clarify that the evidence which Defendant seeks to suppress was found in plain sight during the removal and pat-down of the vehicle's occupants, and not during the subsequent inventory investigation of the vehicle. *See Long*, 463 U.S. at 1050 (holding that if the officer "discover[s] contraband other than weapons [during a legal *Terry* search,] he clearly cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances"). In examining whether the search that uncovered the contraband was reasonable, the focus of the inquiry in this case is *not* whether a search of Defendant's vehicle at the inception of the stop was legally permissible. No such search occurred until after the contraband had already been found. The question is whether evidence the officers happened to see, i.e., in plain view, while removing the occupants from the vehicle should be excluded. Case law is clear on this point: "an officer may not exceed the scope of a protective pat[-]down, and seize items not reasonably considered potential weapons. However, an officer may seize incriminating evidence observed *in plain view* during the course of a protective pat[-]down." *State v. Ochoa*, 2004-NMSC-

023, ¶ 8, 135 N.M. 781, 93 P.3d 1286 (emphasis added); *see id.* ¶ 9 (stating that "items may be seized without a warrant if the police officer was lawfully positioned when the evidence was observed, and the incriminating nature of the evidence was immediately apparent, such that the officer had probable cause to believe that the article seized was evidence of a crime"). Because the officers were justified in conducting a weapons search prior to engaging in further investigation or questioning, we hold that the plain-view evidence that was incidentally uncovered during this valid search need not be excluded.

**{22}**    For the reasons set forth above, we conclude that both *Terry* prongs are satisfied, the officers' actions were justified, substantial evidence supports the district court's findings that the search was constitutionally reasonable, and that the evidence uncovered by the search is admissible. *See State v. Cardenas-Alvarez*, 2001-NMSC-017, ¶ 21, 130 N.M. 386, 25 P.3d 225; *Alderete*, 2011-NMCA-055, ¶ 14. Accordingly, we affirm the district court ruling denying Defendant's motion to suppress.

## C.    Defendant's De Facto Arrest Argument

**{23}**    Finally, Defendant argues that the aggressive manner of the stop amounted to a "de facto arrest unsupported by probable cause." The State contends defense counsel's oral motion to suppress did not fairly invoke a ruling with respect to the de facto arrest issue. In contrast, Defendant argues that defense counsel's oral motion invoked a ruling from the district court that properly preserved the de facto arrest issue because it challenged both the initial stop as well as its expansion. "In order to preserve an issue for appeal, [the d]efendant must make a timely objection that apprises the district court specifically of the nature of the claimed error and invokes an intelligent ruling thereon." *State v. Garcia*, 2013-NMCA-064, ¶ 37, 302 P.3d 111; *see also State v. Bregar*, 2017-NMCA-028, ¶ 29, 390 P.3d 212 (holding that "to preserve an issue for appeal, it must appear that the appellant fairly invoked a ruling of the district court on the same grounds argued in the appellate court" (alterations, internal quotation marks, and citation omitted)). In the record before us, we are unable to locate any argument made by Defendant below that mentions de facto arrest. Defendant only argued that the stop was "an illegal stop," that the police search expanded beyond the allegations regarding fighting, and that evidence that was seized afterwards was "fruit of the poisonous tree." While these general statements preserve Defendants' arguments with respect to the *Terry* prongs, we disagree with Defendant's argument that this preservation extends to the much more specific claim that a de facto arrest occurred. However, in order to properly analyze Defendant's argument that he was deprived of effective assistance of counsel, we address the merits of Defendant's de facto arrest claim and proceed accordingly. As we explain below, even if Defendant had properly raised his de facto arrest claim, based on the record before us, Defendant would not have prevailed.

**{24}**    "When an officer with reasonable suspicion but without probable cause detains an individual in an unreasonable manner, the detention may amount to a de facto arrest, rather than an investigatory detention." *State v. Skippings*, 2014-NMCA-117, ¶ 14, 338 P.3d 128 (internal quotation marks and citation omitted). We consider the

following factors in determining whether there was a de facto arrest: "(1) the government's justification for the detention, (2) the character of the intrusion on the individual, (3) the diligence of the police in conducting the investigation, and (4) the length of the detention." *Id.* (internal quotation marks and citation omitted). As we explained above, the officers were justified in detaining Defendant and there was nothing extraordinarily intrusive about the pat-down search of Defendant. Thus, we focus our attention on the last two factors.

**{25}** "Diligence in the investigation is key, and the expansion of the investigation to look, search, or fish elsewhere is not contemplated for investigatory stops." *State v. Werner*, 1994-NMSC-025, ¶ 20, 117 N.M. 315, 871 P.2d 971; *see id.* (stating that "[t]he concept of diligence has an aspect of speed or haste"). As we discussed above, the pat-down of Defendant was justified for officer safety and was not unreasonably expanded to investigate other crimes. And, while Defendant argues that the safety pat-down and removal of the occupants from the vehicle caused undue delay and prolonged detention, Defendant did not point to any evidence suggesting that the removal and pat-down of the vehicle's occupants took more time than necessary. As Defendant admits "it is unclear exactly how long the seizure took." The last two factors also do not support Defendant's contention that this was a de facto arrest.

### III.    Ineffective Assistance of Counsel

**{26}** Having ruled against Defendant with respect to his appeal of the district court's suppression ruling, we now address Defendant's alternative argument: that Defendants trial counsel was ineffective in "failing to raise [a motion to suppress] prior to trial and failing to clearly articulate his challenge to the invalidity of the stop, its expansion, or the invasive manner of it."

**{27}** A defendant's right to effective assistance of counsel is rooted in the Sixth Amendment to the United States Constitution. *State v. Cordova*, 2014-NMCA-081, ¶ 6, 331 P.3d 980. To prevail on appeal, a defendant must establish that the "record . . . supports a prima facie case of ineffective assistance of counsel." *Id.* ¶ 7. A prima facie case of ineffective assistance of counsel requires a defendant to show: "(1) counsel's performance fell below that of a reasonably competent attorney; (2) no plausible, rational strategy or tactic explains counsel's conduct; and (3) counsel's apparent failings were prejudicial to the defense." *Id.* ¶ 9. "In order to satisfy the reasonableness prong of the ineffective assistance of counsel test in this context, [the defendant] must establish that the facts support the motion to suppress and that a reasonably competent attorney could not have decided that such a motion was unwarranted." *Patterson v. LeMaster*, 2001-NMSC-013, ¶ 19, 130 N.M. 179, 21 P.3d 1032. "We review claims of ineffective assistance of counsel de novo." *Cordova*, 2014-NMCA-081, ¶ 6.

**{28}** Defendant has not established a prima facie case of ineffective assistance of counsel. As we discussed in detail above, our review of the facts in this case persuades us that the filing of a written motion would not have altered the district court's ultimate ruling with respect to the suppression issue or Defendant's related de facto arrest claim.

Consequently, Defendant has failed to show how he was prejudiced by trial counsel's failure to file a written motion to suppress. We need not address the issue of a potential deficiency on defense counsel's part, because even if defense counsel's performance was deficient, Defendant's ineffective assistance of counsel claim nonetheless fails because Defendant cannot show that he was prejudiced. *See Lukens v. Franco*, 2019-NMSC-002, ¶ 19, 433 P.3d 288 ("There is no reason for a court deciding an ineffective assistance claim to address both the deficiency and prejudice components of the inquiry if the defendant makes an insufficient showing on one." (omission, alteration, internal quotation marks, and citation omitted)).

**{29}** We note that our decision with respect to Defendant's ineffective assistance of counsel claim is necessarily based upon the record before this Court. *See State v. Grogan*, 2007-NMSC-039, ¶ 9, 142 N.M. 107 163 P.3d 494 (noting that "the record before the trial court may not adequately document the sort of evidence essential to a determination of trial counsel's effectiveness" (internal quotation marks and citation omitted)). Defendant may file a post-conviction petition below to present this claim should he so choose. *See Cordova*, 2014-NMCA-081, ¶ 7 (stating that "[o]ur Supreme Court has expressed a preference that ineffective assistance of counsel claims be adjudicated in habeas corpus proceedings, rather than on direct appeal").

## IV.     Sufficient Evidence Supports Defendant's Convictions

**{30}** Defendant argues that the State failed to present sufficient evidence to support his convictions for possession of a controlled substance and possession of paraphernalia. For the reasons explained below, we disagree.

**{31}** "When reviewing a verdict for sufficiency of the evidence, our role is to determine whether a rational fact-finder could determine beyond a reasonable doubt the essential facts necessary to convict the accused." *State v. Garcia*, 2005-NMSC-017, ¶ 12, 138 N.M. 1, 116 P.3d 72. We view "the evidence in a light most favorable to the verdict, considering that the [s]tate has the burden of proof beyond a reasonable doubt." *Id.* "The court should not re-weigh the evidence to determine if there was another hypothesis that would support innocence or replace the fact-finder's view of the evidence with the appellate court's own view of the evidence." *Id.* To determine if there was sufficient evidence to support the conviction, "we resolve all disputed facts in favor of the State, indulge all reasonable inferences in support of the verdict, and disregard all evidence and inferences to the contrary." *State v. Largo*, 2012-NMSC-015, ¶ 30, 278 P.3d 532 (internal quotation marks and citation omitted).

### A.     Possession of Methamphetamine

**{32}** Defendant argues that the State failed to prove that Defendant was in possession of methamphetamine because other passengers were in the vehicle. To find Defendant guilty of possession of a controlled substance, the State had to prove the element of possession, which Defendant asserts is unsupported by sufficient evidence. *See* § 30-31-23(A) ("It is unlawful for a person intentionally to possess a controlled substance.");

*see also* § 30-31-25.1(A) ("It is unlawful for a person to use or possess with intent to use drug paraphernalia."). The State was required to show that Defendant knew what the controlled substance was, where it was located, and that he exercised control over it. *See* UJI 14-3130 NMRA. However, a "person's presence in the vicinity of the drugs or his knowledge of the existence or location of the drugs is not, by itself, possession." *Id.* Because Defendant did not have actual possession of the drugs on his person, the State had to prove that Defendant had constructive possession. The State must prove constructive possession by a "rational connection between the location of the drugs and [the] defendant's probable knowledge and control of them." *State v. Brietag*, 1989-NMCA-019, ¶ 14, 108 N.M. 368, 772 P.2d 898; *see also State v. Chandler*, 1995-NMCA-033, ¶ 10, 119 N.M. 727, 895 P.2d 249 (stating that "[c]onstructive possession exists when a defendant has knowledge of and control over the drugs"). However, "[w]hen exclusive control is at issue, additional circumstances, including the conduct of the accused, are required." *State v. Howl*, 2016-NMCA-084, ¶ 31, 381 P.3d 684.

**{33}**    The location of the methamphetamine in the vehicle along with Defendant's ownership of the vehicle and behavior during the stop, demonstrate Defendant's probable knowledge and control of the methamphetamine. The truck containing the bag of methamphetamine was registered to Defendant, and Defendant admitted the truck was his. Defendant was also driving the vehicle when it was stopped by police, and the bag of methamphetamine was located near where Defendant was seated: the floorboard of the driver's side of the vehicle. Before Defendant was removed from the vehicle, he "kept putting his hands inside the vehicle," directly over the area where the methamphetamine was found. After Defendant had been pulled out of the vehicle, he asked one of the other passengers to "close [his] door," on the same side of the vehicle where the methamphetamine was found. These actions, taken together, imply that the Defendant was attempting to hide the methamphetamine from the officer. *See Brietag*, 1989-NMCA-019, ¶ 12 (noting that "in order to sustain [the] defendant's convictions, we must determine whether there were incriminating statements or circumstances tending to support an inference that he constructively possessed the drugs"). Despite the presence of other passengers in the vehicle, the evidence indicates that Defendant was exercising control over the area where the methamphetamine was found. *See Garcia*, 2005-NMSC-017, ¶ 22 (holding that where an ammunition clip was found on the defendant's seat, sufficient evidence existed that defendant possessed the firearm for the ammunition clip); *see also State v. Lopez*, 2009-NMCA-044, ¶ 27, 146 N.M. 98, 206 P.3d 1003 (holding that ownership of a vehicle can provide a link between the owner and the contraband discovered within). We hold that the State presented sufficient evidence to demonstrate that the methamphetamine belonged to Defendant.

## B.    Evidence That the Marijuana Pipe Was Paraphernalia

**{34}**    Defendant argues that the State failed to prove that the pipe found by Officer Romero was used to ingest marijuana. To convict Defendant of possession of drug paraphernalia, the State was required to prove that Defendant had possession of the paraphernalia and intended to "ingest" or "inhale" a controlled substance with the paraphernalia. *See* UJI 14-3107 NMRA. Defendant argues there was insufficient

evidence that the pipe was used for marijuana because the pipe "was never tested" and there was no "discussion of Officer Romero's familiarity with the smell of marijuana." However, "[l]ay opinion concerning the identification of marijuana is admissible, and the qualifications of the witness go to weight and not admissibility." *State v. Rubio*, 1990-NMCA-090, ¶ 5, 110 N.M. 605, 798 P.2d 206. Officer Romero discovered the marijuana pipe in the center console of Defendant's vehicle, "less than a hand's reach away" from Defendant's driver's license. When Officer Romero located the pipe, he noticed that an odor of marijuana was emanating from the pipe. Both officers testified that Defendant admitted to ownership of the marijuana pipe. Specifically, when Officer Romero asked Defendant, "Whose marijuana pipe is that in the middle console?" Defendant replied that "it was his[.]" Therefore, we conclude that sufficient evidence supported Defendant's conviction for possession of drug paraphernalia.

**CONCLUSION**

**{35}** For the foregoing reasons, we affirm.

**{36} IT IS SO ORDERED.**

**BRIANA H. ZAMORA, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**JACQUELINE R. MEDINA, Judge**