2004-NMCA-038

87 P.3d 1088

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Karl AFFSPRUNG, Defendant–Appellant.**

**No. 23591.**

Court of Appeals of New Mexico.

Feb. 3, 2004.

Certiorari Denied, No. 28,516,
March 22, 2004.

Patricia A. Madrid, Attorney General, Santa Fe, Max Shepherd, Assistant Attorney General, Albuquerque, for Appellee.

John B. Bigelow, Chief Public Defender, Cordelia A. Friedman, Assistant Appellate Defender, Santa Fe, for Appellant.

## OPINION

SUTIN, J.

{1} Defendant Karl Affsprung was a passenger in a vehicle stopped for a traffic violation. He appeals the denial of two motions to suppress, following a conviction on drug-related charges. One motion related to evidence obtained after the officer asked for and obtained Defendant's identification. The other motion related to evidence obtained after Defendant was arrested based on an arrest warrant signed by a temporary municipal court judge. We reverse.

## BACKGROUND

{2} The vehicle in which Defendant was a passenger was stopped by a police officer for a faulty license plate light, a misdemeanor under the applicable city ordinance. The stop occurred at 12:43 a.m. in a residential area. The officer engaged his emergency equipment to effectuate the stop. The officer did not observe any other illegal or suspicious activity before he pulled the vehicle over. He approached the vehicle to learn the identities of both driver and passenger, which the officer testified was his routine practice. The officer asked the driver for his driver's license and after informing the driver of the infraction, the officer asked Defendant for identification. Defendant, who did not have a driver's license or any other form of identification at the time, orally gave the officer his name, date of birth, and social security number. The officer then began the process of running a wants and warrants check while writing the driver a traffic citation. While in his patrol car writing the citation, the officer discovered he had not obtained the driver's vehicle registration and proof of insurance, so he went back to the vehicle and obtained that information. The officer then returned to his patrol car to continue his activities in relation to the citation and the wants and warrants check.

{3} Through this investigatory process, the officer learned that there was an outstanding warrant for Defendant's arrest. The officer called for backup, and after backup arrived, the officer arrested Defendant, conducted a patdown search incident to the arrest, and discovered a plastic tube containing a white powder inside a cigarette box in one of Defendant's pockets. Defendant was later charged for possession of methamphetamine and drug paraphernalia.

{4} Defendant filed a pretrial motion to suppress evidence contending that the arrest warrant was invalid because it had been signed by a temporary municipal court judge who had no authority to act at the time. The court denied this motion on the ground that the municipal judge was serving in an authorized temporary capacity and had authority to sign Defendant's arrest warrant. At the beginning of the jury trial Defendant verbally moved to suppress on the theory that the officer's request for Defendant's identification was unlawful. The testimony at the hearing on this motion showed that, prior to asking Defendant for his identification, and prior to conducting a wants and warrants check, the officer had no suspicion that Defendant was then or had been engaged in criminal activity, or that Defendant was armed or dangerous. The officer asked Defendant for his identification for "officer safety," and because "[y]ou have to identify who you're dealing with." The officer reasoned that "things can occur for any little reason." The officer further testified that while he was preparing the citation, neither the driver nor Defendant was free to leave.

{5} After a legal analysis of this first impression issue in New Mexico regarding passenger identification during a traffic stop, the district court denied the motion to suppress. Relying on the reasoning in a Colorado case, *People v. Jackson*, 39 P.3d 1174 (Colo.2002) (en banc), the district court held that the officer's request for Defendant's identification initiated a consensual encounter and therefore was not within Fourth Amend-

ment jurisprudence. The court then determined that the encounter did not become a Fourth Amendment detention because the officer did not retain any documents and did not order Defendant to remain in the vehicle while the officer completed his duties. De-. fendant pled no contest to the charges, reserving the right to appeal the court's rulings on the motions. This appeal followed.

## DISCUSSION

### Standard of Review

{6} We review the denial of a motion to suppress as involving a mixed question of law and fact, reviewing the facts under the substantial evidence standard and then conducting a de novo review of the district court's application of law to those facts. *State v. Reynolds,* 119 N.M. 383, 384, 890 P.2d 1315, 1316 (1995); *City of Albuquerque v. Haywood,* 1998–NMCA–029, ¶ 10, 124 N.M. 661, 954 P.2d 93; *State v. Walters,* 1997–NMCA–013, ¶ 8, 123 N.M. 88, 934 P.2d 282.

> The determination of a seizure has two discrete parts: (1) what were the circumstances surrounding the stop, including whether the officers used a show of authority; and (2) did the circumstances reach such a level of accosting and restraint that a reasonable person would have believed he or she was not free to leave? The first part is a factual inquiry, which we review for substantial evidence. The second part is a legal inquiry, which we review de novo.

*State v. Jason L.,* 2000–NMSC–018, ¶ 19, 129 N.M. 119, 2 P.3d 856. We view the evidence in a light most favorable to the district court's determination. *Id.* Here, the only issue is whether the detention of Defendant amounted to a seizure.

### The Encounter Was Not Consensual

{7} The *Jackson* case, on which the district court in the present case heavily relied, is similar to the present case. In *Jackson,* the officer stopped a vehicle being driven with its parking lights on but not its headlights. 39 P.3d at 1178. The officer obtained the driver's documentation, and then, as a routine procedure asked for the passenger's identification. *Id.* The officer was given the passenger's information, and the officer retained it and had the passenger remain in the car while the officer performed a warrants check. *Id.* at 1178–79. The officer had no reason to suspect that the passenger · was armed or involved in any criminal activity. *Id.* at 1178. As to the inquiry alone, the district court found credible the officer's testimony that, had the passenger declined the request, compliance would not have been required. *Id.* The Colorado Supreme Court held that the officer's request merely initiated a consensual encounter and that the passenger was free to ignore or decline the request. *Id.* The Court went on to hold that the officer needed reasonable suspicion to retain the passenger's identification and instruct the passenger to remain in the vehicle while running a warrants check. *Id.* That further activity escalated the consensual encounter into an investigatory stop. *Id.*

{8} In the present case, the State's argument, indeed, its only argument in support of the district court's denial of the motion to suppress relating to obtaining Defendant's identification, is that the entire encounter between the officer and Defendant was consensual and not a seizure and therefore outside the realm of the Fourth Amendment. The State does not deny that in pulling the vehicle over for a traffic violation, the officer effected a stop and a detention within the parameters of the Fourth Amendment to conduct an investigation relating to the driver of the vehicle. The State's position is that a passenger, as opposed to the driver, is stopped merely by virtue of being in the vehicle and is therefore not detained in a manner that would invoke the Fourth Amendment. According to the State, the passenger "would feel free to leave or be at liberty to ignore the police presence and go about [his] business." The State further argues that the initial consensual encounter with Defendant did not become a detention under the Fourth Amendment because the officer did not obtain and hold any documentation belonging to Defendant. Finally, the State points out that although the officer testified that Defendant was not free to leave, that information was not conveyed to

**310**

Defendant and Defendant was therefore free to leave.

{9} With respect to a driver, a traffic stop is a seizure under the Fourth Amendment. *See State v. Reynolds,* 117 N.M. 23, 26, 868 P.2d 668, 671 (Ct.App.1993), *rev'd on other grounds,* 119 N.M. 383, 890 P.2d 1315. No issue exists in this case as to the validity of the stop of the vehicle and the seizure of the driver. "A police officer may stop a vehicle if he has an objectively reasonable suspicion that the motorist has violated a traffic law." *State v. Vandenberg,* 2002–NMCA–066, ¶ 17, 132 N.M. 354, 48 P.3d 92, *rev'd on other grounds,* 2003–NMSC–030, 134 N.M. 566, 81 P.3d 19.

{10} Following a valid stop, for a traffic violation, an officer may lawfully continue with a de minimis detention for inquiry into matters reasonably related to the circumstances that initially justified the stop and to check out license, registration, and insurance. *See Reynolds,* 119 N.M. at 388, 890 P.2d at 1320; *Haywood,* 1998–NMCA–029, ¶¶ 13–15, 124 N.M. 661, 954 P.2d 93. In *Reynolds,* the Court stated that an officer may identify the person with whom he is dealing "to protect himself ... from danger, to accurately prepare any required reports concerning his contact with the motorist, and to allow the officer to adequately respond to allegations of illegal conduct or improper behavior." 119 N.M. at 388, 890 P.2d at 1320 (internal quotation marks and citation omitted). Further, the officer is also authorized to run a wants and warrants check in relation to the driver to ensure the continued validity of the documents provided. *See State v. Taylor,* 1999–NMCA–022, ¶ 14, 126 N.M. 569, 973 P.2d 246.

{11} Continued detention of a driver, or detention of passengers, for other investigative purposes, including investigatory questioning, requires reasonable suspicion, proven through specific articulable facts, that the driver or passenger has been or is engaged in a criminal activity other than the initial traffic violation. *State v. Romero,* 2002–NMCA–064, ¶ 10, 132 N.M. 364, 48 P.3d 102; *Taylor,* 1999–NMCA–022, ¶ 20, 126 N.M. 569, 973 P.2d 246; *Haywood,* 1998–

NMCA–029, ¶ 16, 124 N.M. 661, 954 P.2d 93; *State v. Cobbs,* 103 N.M. 623, 626, 711 P.2d 900, 903 (Ct.App.1985). A driver or passenger may also be detained under certain circumstances out of an officer's concern about weapons. Inquiry about weapons has been discussed in several New Mexico decisions. *See Vandenberg,* 2003–NMSC–030, ¶¶ 10, 62, 64, 67, 134 N.M. 566, 81 P.3d 19 (majority opinion and dissenting opinion); *State v. Chapman,* 1999–NMCA–106, ¶¶ 2, 17, 127 N.M. 721, 986 P.2d 1122; *Taylor,* 1999–NMCA–022, ¶¶ 19, 23–24, 126 N.M. 569, 973 P.2d 246; *Haywood,* 1998–NMCA–029, ¶¶ 5, 16–17, 124 N.M. 661, 954 P.2d 93.

{12} Whether a police-citizen encounter involving an officer's inquiry or request is consensual usually centers on an analysis of whether the citizen is free to refuse to respond and free to leave. In *State v. Lopez,* 109 N.M. 169, 170, 783 P.2d 479, 480 (Ct.App. 1989), *modified on other grounds by Jason L.,* 2000–NMSC–018, ¶ 19, 129 N.M. 119, 2 P.3d 856, this Court quoted the mainstay language from *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), where a drug enforcement officer approached the defendant in an airport terminal and asked to see her identification and airline ticket:

> We conclude that a person has been "seized" within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

Following this language, *Mendenhall* added that "[i]n the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person." *Id.* at 555, 100 S.Ct. 1870. In *Lopez,* police detectives used their vehicle to

block the defendant's vehicle, and then four detectives approached the defendant's vehicle and displayed their badges. 109 N.M. at 172, 783 P.2d at 482. We stated that, in making a determination of whether a reasonable person would feel free to leave, the district court should consider the factual circumstances of each case, considering "(1) the conduct of the police, (2) the person of the individual citizen, and (3) the physical surroundings of the encounter." *Id.* at 171, 783 P.2d at 481; *see also Jason L.,* 2000–NMSC–018, ¶ 15, 129 N.M. 119, 2 P.3d 856 (reiterating the *Lopez* factors).

{13} In addition to the language in *Mendenhall,* the State relies on *INS v. Delgado,* 466 U.S. 210, 212, 216, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984), in which the United States Supreme Court addressed the concept of consensual encounter involving "interrogation relating to one's identity or a request for identification by the police" in a "factory survey" conducted of factory employees. The State points to language in *Delgado* that "[w]hile most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response," acknowledging, at the same time, the language in *Delgado* that states that a seizure occurs if "the circumstances of the encounter are so intimidating as to demonstrate that a reasonable person would have believed he was not free to leave." *Id.*

{14} The encounter here was the everyday, ordinary occurrence of a motorist stop for a traffic violation. The context is not that of federal drug investigatory activity at airports such as that in *Mendenhall,* or a factory survey such as that in *Delgado.* The law with respect to ordinary traffic stops and concomitant de minimis investigatory detention is fairly well settled in New Mexico. A driver should not, and, we believe, does not feel free to refuse to respond to an officer's inquiry about license, registration, and insurance. *See, e.g.,* NMSA 1978, § 66–3–13 (1978) (requiring every owner to exhibit registration evidence on demand of any police officer); § 66–5–16 (1985) (requiring every licensee to display his or her driver's license upon demand of a peace officer); § 66–5–

205(B) (1998) (prohibiting persons from driving uninsured vehicles). A driver whose identification information is taken by an officer to the patrol car should not, and, we believe, does not feel free to leave. *See Taylor,* 1999–NMCA–022, ¶ 15, 126 N.M. 569, 973 P.2d 246 (stating that the driver was not free to leave while the officer retained his driver's license during a wants and warrants check, indicating that the driver "continued to be seized" as another officer contemporaneously approached and began questioning the driver); *Reynolds,* 119 N.M. at 386, 890 P.2d at 1318 ("[I]ndividuals have no legitimate subjective expectation of privacy in their license, registration, or insurance documents when they are operating a motor vehicle and an officer requests to see such documents."). Even though the officer may be pleasant, the encounter is not consensual. While perhaps the procedure officers employ to check information is not one with which drivers may be familiar, the investigatory aspect of the stop that involves a computer or dispatcher check related to the driver's information and the vehicle, or related to the driver's traffic or criminal history, has become a routine activity for traffic officers.

{15} An officer's request for, and obtaining of, a passenger's identifying information in the context of an ordinary traffic stop, where the officer has requested and obtained the driver's identification and documentation, can only reasonably be viewed as an integral part of the officer's ongoing investigatory detention. Indeed, in the present case, the district court determined that the officer "routinely asks passengers for their identification so that he knows who he is dealing with." The officer testified that this was for officer safety, because "things can occur for any little reason." A passenger in a vehicle stopped because of a traffic-related violation is situated in a vehicle that is not free to be driven away and is not free to drive the vehicle away. Because of this and because of the fact that the driver is not free to refuse an officer's request for identification and documentation, we do not believe that a reasonable passenger would feel free to leave the area and refuse the officer's request for identification.

{16} In reality, few passengers in this circumstance would, in our view, feel free to ignore an officer's request for identification, or feel free to get out of the vehicle and leave the area after either refusing to give the information or even after providing it. *See State v. Mendez*, 137 Wash.2d 208, 970 P.2d 722, 724 (1999) (en banc) (involving arrest of passenger following an ordinary traffic stop in which, as officers approached, the passenger got out of the vehicle and began to walk away, the officers told him to get back into the vehicle, he continued to walk and then to run after a command to return to the vehicle, and after apprehending the passenger, the officers searched him and found a marijuana pipe, following which the passenger was charged with both obstructing police officers and possession of drug paraphernalia). Nor, in our view, would an officer likely tolerate a passenger's refusal to give the information followed by the passenger leaving the area. Indeed, consistent with this view, the officer in the present case candidly testified that Defendant was not free to leave. In these circumstances, the officer conveys a message that compliance with his request is necessary. *See Walters*, 1997–NMCA–013, ¶ 12, 123 N.M. 88, 934 P.2d 282 (stating "[t]he test for determining if [an] encounter is consensual depends on whether, under the totality of the circumstances . . ., 'the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter' " (quoting *Florida v. Bostick*, 501 U.S. 429, 439, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991))); *see also Jason L.*, 2000–NMSC–018, ¶ 14, 129 N.M. 119, 2 P.3d 856 ("The police do not need any justification to approach a person and ask that individual questions; however, the officer may not 'convey a message that compliance with their requests is required.' " (quoting *Bostick*, 501 U.S. at 435, 111 S.Ct. 2382)).

{17} We doubt that passengers generally, under the circumstances in the present case, would want to risk the consequences they would fear from their refusal to provide identifying information, or from providing the information and then leaving the area. We think it strains common sense to say a passenger under the circumstances here can feel free to ignore such direct police privacy intrusion. We think it more fiction than fact to call this encounter consensual. We know of no legal or policy purpose or effect that requires or invites an encounter such as this to be called consensual. That the passenger voluntarily provides information at the officer's request does not turn the encounter into a consensual one.

■ {18} We hold that an ordinary vehicle stop for a traffic violation with a concomitant investigation in which the officer requests both the driver's and the passenger's identification in connection with the violation and nothing more than a generalized concern about officer safety is a seizure within the Fourth Amendment as to the passenger whose identification is obtained. We disagree with *Jackson* insofar as it can be read to require a different result.

### The Request with Continued Investigatory Detention Was Unlawful

{19} This was an investigative detention of the vehicle and the driver. It became an investigative detention involving Defendant also. The officer requested and obtained identifying information from both driver and passenger for the purpose of running wants and warrants checks. He entered the encounter intending to both gather and check information in order to know who he was dealing with, for safety purposes. With no suspicion, much less reasonable suspicion, regarding criminal activity on the part of Defendant, and no particularized concern about his safety, the officer had no legitimate basis on which to obtain the identifying information for the purpose of checking it out through a wants and warrants check.

{20} We are sensitive to the generalized concern an officer may have regarding potential harm to them from the friction that can flow from a traffic stop. We can fully understand that pursuant to that generalized concern, the officer may want to determine if anyone in the vehicle has a history that might give the officer reason to be extra cautious regarding the driver and occupants of the vehicle. But we do not believe that this generalized concern, without more, is

sufficient to override reasonable Fourth Amendment privacy considerations of passengers in relation to routine traffic misdemeanor stops such as was present here. Defendant was present solely by virtue of the coincidence he was a passenger in the vehicle stopped for a malfunctioning license plate light, and under the circumstances, giving the officer no suspicion whatsoever of criminal activity or danger of harm from weapons. Defendant's mere presence in a vehicle with a faulty license plate light adds nothing of significance that causes this even minimal intrusion to tip the balance in favor of public or officer safety over individual Fourth Amendment privacy. To permit law enforcement officers to ask for and to check out passenger identification under these circumstances opens a door to the type of indiscriminate, oppressive, fearsome authoritarian practices and tactics of those in power that the Fourth Amendment was designed to prohibit. *See Commonwealth v. Alvarez,* 44 Mass.App.Ct. 531, 692 N.E.2d 106, 109 (1998) (holding that obtaining identification of a passenger in a routine traffic stop when there was no reasonable suspicion that the passenger was engaged in criminal activity is unlawful and "uncomfortably associated with authoritarian societies"); *Hornberger v. Am. Broadcasting Cos.,* 351 N.J.Super. 577, 799 A.2d 566, 587 (Ct.App.Div.2002) (following *Alvarez* instead of *Jackson* ).

{21} We hold the officer's request for Defendant's identifying information and the use of the information to conduct a wants and warrants check constituted an unlawful detention of Defendant. The unlawful detention tainted the evidence obtained from the patdown search and that evidence should have been suppressed.

**The Temporary Municipal Judge's Authority**

{22} Defendant contends that the temporary municipal court judge lacked authority to sign the arrest warrant that caused the officer to arrest Defendant. Because we are reversing the denial of Defendant's motion to suppress evidence based on the officer's unlawful request for Defendant's identifying information, we choose not to address this issue.

**CONCLUSION**

{23} We reverse.

{24} **IT IS SO ORDERED.**

PICKARD and VIGIL, JJ., concur.