This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                    **NO. 30,533**

**LAWRENCE E. GRIGGS,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Teddy L. Hartley, District Judge**

Gary K. King, Attorney General
Margaret E. McLean, Assistant Attorney General
Joel Jacombsen, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Nancy M. Hewitt, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**CASTILLO, Judge.**

Defendant appeals the denial of his motion to suppress. We issued a calendar notice proposing to reverse and, pursuant to an extension, the State filed a timely memorandum in opposition. We remain unpersuaded by the State's arguments and reverse.

The district court's ultimate ruling on Defendant's motion to suppress involves mixed questions of fact and law. *See State v. Neal*, 2007-NMSC-043, ¶ 15, 142 N.M. 176, 164 P.3d 57. On review, we determine "whether the law was correctly applied to the facts, viewing them in a manner most favorable to the prevailing party." *State v. Jason L.*, 2000-NMSC-018, ¶ 10, 129 N.M. 119, 2 P.3d 856. We defer to the district court's findings of fact to the extent that they are supported by substantial evidence. *Id.* However, we "review the application of the law to these facts, including determinations of reasonable suspicion, under a de novo standard of review." *State v. Patterson*, 2006-NMCA-037, ¶ 13, 139 N.M. 322, 131 P.3d 1286.

When an officer stops an automobile to investigate a possible crime, we analyze the reasonableness of the stop and ensuing investigatory detention in accordance with the two-part test in *Terry v. Ohio*, 392 U.S. 1 (1968). *See State v. Duran*, 2005-NMSC-034, ¶ 23, 138 N.M. 414, 120 P.3d 836. We ask whether the stop was justified at its inception and whether the officer's actions during the stop were

reasonably related to circumstances that justified the stop. *Duran*, 2005-NMSC-034, ¶ 23. Furthermore, "investigation beyond the scope of the initial traffic stop is justified only if the officer can articulate specific and particularized factors that give rise to an objectively reasonable suspicion that other criminal activity has been or may be afoot." *State v. Prince*, 2004-NMCA-127, ¶ 9, 136 N.M. 521, 101 P.3d 332.

At the suppression hearing, Officer Rains testified that he and Officer Wright were working a narcotics patrol and saw a maroon van pull up and stop at a "known" drug house. [MIO 2-3; RP 50-51, 81] The officers saw Defendant leave the van, enter the house, and promptly return to the van. [MIO 9; RP 81] The officers followed the van and soon stopped it for making a turn without signaling and cutting off traffic. [MIO 4; RP 81]

Rains asked the driver to exit the van and questioned him away from Defendant about the purpose of the trip. [RP 16] The driver said he was visiting his friend, Chris. [RP 16] Rains asked the driver to explain Defendant's actions in entering and exiting the house, and the driver had no explanation. [RP 16]

Rains then asked Defendant to step out of the van and questioned him as to where they were coming from, and Defendant said he had been visiting the boyfriend of his sister. [RP 16, 82] Having obtained inconsistent answers from the driver and Defendant as to the purpose of the stop at the drug house, Rains then explained his

3

suspicion and asked Defendant if he had any crack cocaine on him. [RP 16, 81-82] Defendant said he did not, and Rains asked if he could search him. [RP 16] Defendant said yes, and Rains discovered crack cocaine in Defendant's pocket. [RP 16, 78] Rains testified that he did not know Defendant before he stopped the van, he did not see Defendant commit any crimes, and he knew nothing of Defendant's criminal history. [DS 3-4]

In this case, the district court found—and Defendant does not dispute—that the initial stop was valid "due to an observed traffic violation." [MIO 4; RP 82] However, as discussed more fully in our notice of proposed summary disposition, given that the vehicle was stopped for a traffic violation and given that Defendant was questioned on matters unrelated to the traffic violation, officers were required to have "reasonable suspicion, proven through specific articulable facts," that Defendant had been or was about to be engaged in criminal activity unrelated to the traffic violation. *State v. Affsprung*, 2004-NMCA-038, ¶ 11, 135 N.M. 306, 87 P.3d 1088. In our notice, we proposed to reverse the district court's denial of the motion to suppress because the officers lacked the requisite reasonable suspicion that Defendant had been or was about to be engaged in criminal activity. [RP 81-82]

In its memorandum in opposition, the State repeats its central contention raised below that observation of Defendant going in and out of a known drug house is

enough, standing alone, to give rise to reasonable suspicion. [MIO 9-10; RP 50] We are unpersuaded and again turn to our Supreme Court's opinion in *Neal*. In that case, officers saw a truck in front of a house that was being investigated for drug activity. 2007-NMSC-043, ¶ 4. The defendant was in the driver's seat, and officers saw a man leaning into the truck through the driver's window. *Id.* The defendant drove away from the house, and the officer followed. *Id.* ¶ 5. The officer saw that the truck had a cracked windshield and stopped the defendant on that basis. *Id.* Once he approached the truck, the officer recognized the defendant as someone with "prior drug-related and assault convictions." *Id.*

After obtaining the defendant's license, registration, and insurance, running a wants and warrants check, and learning that the defendant might be armed and dangerous, the officer asked the defendant about the identity of the person who had spoken with him through the window, and learned that the person identified was also under investigation for drugs. *Id.* ¶¶ 6-7. The officer described the defendant as "nervous and becoming agitated during this exchange." *Id.* ¶ 7. The officer returned the defendant's documents, issued a citation for the cracked windshield, and asked the defendant to consent to a search of his truck. *Id.* ¶¶ 7-8. When the defendant refused, the officer detained the truck while awaiting a canine for a perimeter sniff. *Id.* ¶ 8.

Our Supreme Court held that the officers did not have reasonable suspicion to

search for drugs despite the evidence showing that the defendant: stopped in front of a house being investigated for drugs, talked to a convicted felon, became nervous and wanted to leave when he was stopped by the officers, and refused to consent to the search of the truck. *Id.* ¶¶ 27-31. In this case, as in *Neal*, the allegedly suspicious circumstances, "smack more of the type of conjecture and hunch we have rejected in the past as insufficient to constitute reasonable suspicion." *Id.* ¶ 31; *see Prince*, 2004-NMCA-127, ¶ 19 (recognizing that "[o]fficers may not use a lawful stop to fish for evidence of other crimes where there is insufficient reason to detain a defendant beyond the purpose of the initial detention").

The State seeks to distinguish *Neal* because in this case, the officers knew Defendant went into a drug house while in *Neal* drug activity was only suspected. [MIO 11] We disagree. Even though Defendant went into a known drug house, this does not mean that officers knew Defendant was involved in drug activity. [MIO 11] *See Prince*, 2004-NMCA-127, ¶ 17 (stating that "[g]uilt by association and generalized suspicions are insufficient grounds upon which to base an investigatory detention"); *cf. State v. Graves*, 119 N.M. 89, 94, 888 P.2d 971, 976 (Ct. App. 1994) (holding that the defendant's presence on the premises subject to a search warrant does not justify detaining or searching the defendant).

In its memorandum in opposition, the State also contends that the questioning

6

of Defendant was justified because he was not detained beyond the length of time necessary to issue a citation for the illegal turn. [MIO 5-7] We are unpersuaded by this argument for two reasons.

First, we are not convinced that the State preserved this argument by alerting the district court to its contention that the initial questioning of Defendant was justified because it took place while officers were investigating the driver for the traffic violation. *See* Rule 12-216(A) NMRA (stating that, in order to preserve a question for review, "it must appear that a ruling or decision by the district court was fairly invoked"); *State v. Janzen*, 2007-NMCA-134, ¶ 11, 142 N.M. 638, 168 P.3d 768 (noting that "while the [s]tate may have a number of different theories as to why the evidence should not be suppressed, in order to preserve its arguments for appeal, the [s]tate must have alerted the district court" to the particular theories it was relying on in support of its argument). There is nothing in the State's response to Defendant's motion to suppress and nothing in the district court's letter decision indicating that the motion to suppress was denied based upon a finding that questioning of Defendant was justified because he was not detained beyond the time necessary to process the traffic violation citation. [RP 50-53, 81-82] Therefore, we may decline to consider this argument on appeal. *See Janzen*, 2007-NMCA-134, ¶¶ 14-18 (declining to consider the [s]tate's argument as to why a search was valid based upon theories that

7

were not provided to the district court).

Moreover, even if we were to consider the State's argument, we would reject it because the State has failed to convince us that an officer is justified in questioning a passenger merely because the questioning takes place while the driver is being investigated and the traffic violation is being processed. *See Affsprung*, 2004-NMCA-038, ¶¶ 2, 19-21 (holding that officers were not justified in asking the passenger for his identification and running a warrant check on the passenger even though this investigation apparently occurred at the same time the driver was being investigated). To hold otherwise would allow any two officers to question a passenger any time the driver was stopped for a traffic violation with no regard for the constraints imposed by the Fourth Amendment. One officer could investigate the traffic violation while his partner would be free to engage in a fishing expedition involving the passenger, as long as he completed his inquiry during the time it took to process the traffic violation.

Finally, the State contends that the officers' actions in requesting that Defendant step out of the van did not require reasonable suspicion or "separate constitutional justification." [MIO 12] The State is correct that officers may request that a passenger step out of stopped vehicle for reasons of safety. [MIO 12] *See Arizona v. Johnson*, 129 S. Ct. 781, 786 (2009) (holding that an officer may ask a passenger

8

to exit a vehicle based upon concerns regarding officer safety); *Affsprung,* 2004-NMCA-038, ¶ 11 (noting that a "driver or passenger may also be detained under certain circumstances out of an officer's concern about weapons"). However, in this case there is no suggestion that the officers had Defendant leave the van so he could be independently questioned away from the driver due to reasons of officer safety. *See Affsrpung*, 2004-NMCA-038, ¶ 20 (holding that, during a routine traffic stop in which the defendant "was present solely by virtue of the coincidence he was a passenger in the vehicle" and in which there were no circumstances suggesting danger due to weapons, there was nothing to "tip the balance in favor of public or officer safety over individual Fourth Amendment privacy").

**CONCLUSION**

In sum, we remain unconvinced that the single act of entering and exiting a known drug house is enough to constitute reasonable suspicion that Defendant was engaged in criminal activity. Therefore, for the foregoing reasons, as well as those set forth in our notice of proposed disposition, we reverse the district court's denial of Defendant's motion to suppress.

**IT IS SO ORDERED.**

_____
**CELIA FOY CASTILLO, Judge**

9

**WE CONCUR:**

_____

**MICHAEL D. BUSTAMANTE, Judge**

_____

**RODERICK T. KENNEDY, Judge**